FILED

JAMES E. KEENER, PRO SE
40485 Murrieta Hot Springs #402
Murrieta, CA 92563
Telephone:   (951) 239-6897

2011 JUL 28  PM 12: 48

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
RIVERSIDE

BY

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

ED CV 11  01194

| | |
|---|---|
| JAMES E. KEENER, | Case No. |
| Plaintiff, | **COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF, and DECLARATORY RELIEF** |
| v. | |
| MEDIA BREAKAWAY, LLC d/b/a AFFILATE.COM, DYNAMIC DOLPHIN, INC, STEVEN RICHTER, SCOTT RICHTER, CAROL RICHTER, and DOES 1-100, | 1. **VIOLATIONS OF CAN-SPAM ACT (15 U.S.C. 7701 *et seq.*)** |
| Defendants. | 2. **VIOLATIONS OF THE LANHAM ACT (15 U.S.C. §1125 *et seq.*)** |
| | 3. **VIOLATIONS OF CA PROHIBITION AGAINST HARASSMENT (Cal. Pen. Code § 653m.)** |
| | 4. **VIOLATION OF CA CORPORATIONS CODE** |
| | 5. **VIOLATIONS OF CA ANTI-SPAM LAW (Cal. Bus. & Prof. Code § 17529.5)** |
| | 6. **VIOLATIONS OF CA FALSE ADVERTISING LAW (Cal. Bus. & Prof. Code § 17500 *et seq.*)** |
| | 7. **VIOLATIONS OF UNFAIR COMPETITON LAW (Cal. Bus. & Prof. Code § 17200 *et seq.*)** |

1

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF



8. **VIOLATION OF CA CONSUMER LEGAL REMEDIES ACT (Cal. Bus. & Prof. Code § 1750 *et seq.*)**

Plaintiff, James E. Keener, brings this action seeking damages, injunctive relief, and declaratory relief against defendants related to numerous unsolicited commercial email messages, commonly referred to as "spam," sent to Keener.

## CONGRESSIONAL FINDINGS

1) "Electronic mail has become an extremely important and popular means of communication, relied on by millions of Americans on a daily basis for personal and commercial purposes. Its low cost and global reach make it extremely convenient and efficient, and offer unique opportunities for the development and growth of frictionless commerce.

2) The convenience and efficiency of electronic mail are threatened by the extremely rapid growth in the volume of unsolicited commercial electronic mail. Unsolicited commercial electronic mail is currently estimated to account for over half of all electronic mail traffic, up from an estimated 7 percent in 2001, and the volume continues to rise. Most of these messages are fraudulent or deceptive in one or more respects.

3) The receipt of unsolicited commercial electronic mail may result in costs to recipients who cannot refuse to accept such mail and who incur costs for the storage of such mail, or for the time spent accessing, reviewing, and discarding such mail, or for both.

4) The receipt of a large number of unwanted messages also decreases the convenience of electronic mail and creates a risk that wanted electronic mail messages, both commercial and noncommercial, will be lost, overlooked, or discarded amidst the larger volume of unwanted

2

1   messages, thus reducing the reliability and usefulness of electronic mail
2   to the recipient.

3   5)   Some commercial electronic mail contains material that many
4        recipients may consider vulgar or pornographic in nature.

5   6)   The growth in unsolicited commercial electronic mail imposes
6        significant monetary costs on providers of Internet access services,
7        businesses, and educational and nonprofit institutions that carry and
8        receive such mail, as there is a finite volume of mail that such
9        providers, businesses, and institutions can handle without further
10       investment in infrastructure.

11  7)   Many senders of unsolicited commercial electronic mail purposefully
12       disguise the source of such mail.

13  8)   Many senders of unsolicited commercial electronic mail purposefully
14       include misleading information in the messages' subject lines in order
15       to induce the recipients to view the messages.

16  9)   While some senders of commercial electronic mail messages provide
17       simple and reliable ways for recipients to reject (or "opt-out" of) receipt
18       of commercial electronic mail from such senders in the future, other
19       senders provide no such "opt-out" mechanism, or refuse to honor the
20       requests of recipients not to receive electronic mail from such senders
21       in the future, or both.

22  10)  Many senders of bulk unsolicited commercial electronic mail use
23       computer programs to gather large numbers of electronic mail
24       addresses on an automated basis from Internet websites or online
25       services where users must post their addresses in order to make full use
26       of the website or service.

27  11)  Many States have enacted legislation intended to regulate or reduce
28       unsolicited commercial electronic mail, but these statutes impose

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

different standards and requirements. As a result, they do not appear to have been successful in addressing the problems associated with unsolicited commercial electronic mail, in part because, since an electronic mail address does not specify a geographic location, it can be extremely difficult for law-abiding businesses to know with which of these disparate statutes they are required to comply.

12) The problems associated with the rapid growth and abuse of unsolicited commercial electronic mail cannot be solved by Federal legislation alone. The development and adoption of technological approaches and the pursuit of cooperative efforts with other countries will be necessary as well. *See* 15 U.S.C. § 7701(a)

In an April 2003 report entitled, *False Claims in Spam*, "the Federal Trade Commission (FTC) found that 66 percent of all spam contains some kind of false, fraudulent, or misleading information, either in the e-mail's routing information, its subject line, or the body of its message." S. Rep. No. 108-102 ("CAN-SPAM Act of 2003"), at 2. The FTC found that "one-third of all spam contains a fraudulent return e-mail address that is included in the routing information (known as the 'header') of the e-mail message." *Id.* at 3.

In the Senate Report, Congress also found that falsified headers "not only trick ISP's [Internet Service Providers] increasingly sophisticated filters," but "lure consumers into mistakenly opening messages from what appears to be people they know." *Id.* In addition, Congress found that senders use false or misleading subject lines to "trick the recipient into thinking that the e-mail sender has a personal or business relationship with the recipient." *Id.*

## CALIFORNIA LEGISLATIVE FINDINGS

Similarly, the California Legislature in enacting its anti-spam law, codified at Cal. Bus. & Prof. Code § 17529 *et seq.*, found that:

a) "Roughly 40 percent of all e-mail traffic in the United States is comprised

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

of unsolicited commercial e-mail advertisements (hereafter spam) and industry experts predict that by the end of 2003 half of all e-mail traffic will be comprised of spam.

b) The increase in spam is not only an annoyance but is also an increasing drain on corporate budgets and possibly a threat to the continued usefulness of the most successful tool of the computer age.

c) Complaints from irate business and home-computer users regarding spam have skyrocketed, and polls have reported that 74 percent of respondents favor making mass spamming illegal and only 12 percent are opposed, and that 80 percent of respondents consider spam very annoying.

d) According to Ferris Research Inc., a San Francisco consulting group, spam will cost United States organizations more than ten billion dollars ($10,000,000,000) this year, including lost productivity and the additional equipment, software, and manpower needed to combat the problem. California is 12 percent of the United States population with an emphasis on technology business, and it is therefore estimated that spam costs California organizations well over 1.2 billion dollars ($1,200,000,000).

e) Like junk faxes, spam imposes a cost on users, using up valuable storage space in email inboxes, as well as costly computer band width, and on networks and the computer servers that power them, and discourages people from using e-mail.

f) Spam filters have not proven effective.

g) Like traditional paper "junk" mail, spam can be annoying and waste time, but it also causes many additional problems because it is easy and inexpensive to create, but difficult and costly to eliminate.

h) The 'cost shifting' from deceptive spammers to Internet business and e-mail users has been likened to sending junk mail with postage due or making telemarketing calls to someone's pay-per-minute cellular phone.

5

i) Many spammers have become so adept at masking their tracks that they are rarely found, and are so technologically sophisticated that they can adjust their systems to counter special filters and other barriers against spam and can even electronically commandeer unprotected computers, turning them into spam-launching weapons of mass production.

j) There is a need to regulate the advertisers who use spam, as well as the actual spammers, because the actual spammers can be difficult to track down due to some return addresses that show up on the display as 'unknown' and many others being obvious fakes and they are often located offshore.

k) The true beneficiaries of spam are the advertisers who benefit from the marketing derived from the advertisements.

l) In addition, spam is responsible for virus proliferation that can cause tremendous damage both to individual computers and to business systems.

m) Because of the above problems, it is necessary that spam be prohibited and that commercial advertising e-mails be regulated as set forth in this article." *See* § 17529.

## INTERNET INFRASTRUCTURE OVERVIEW

The Internet is a global system of interconnected computer networks that serve billions of users worldwide. It is a network of networks that consists of millions of private, public, academic, business, and government networks, of local to global scope, that are linked by a broad array of electronic, wireless and optical networking technologies.

The most prominent component of the Internet model is the Internet Protocol ["IP"] which provides addressing systems (IP addresses) for computers on the Internet. IP addresses allow different computers and devices to communicate with each other, similar to how phone numbers allow people to communicate. Every computer or device that is connected to the Internet is assigned a unique IP address.

6

1    The allocation of IP addresses is overseen by the Internet Assigned Number

2    Authority (IANA). IANA allocates large blocks of IP addresses to Regional Internet

3    Registries (RIRs) that serve specific areas around the world. The RIRs then allocate

4    smaller blocks of IP addresses to Internet Service Providers ["ISPs"] who then sub-

5    allocate to businesses, organizations, and consumers.

6    American Registry for Internet Numbers ["ARIN"] is the RIR for North

7    America and manages the distribution of Internet number resources from Virginia.

8    The Internet operates without a central governing body. However, to maintain

9    interoperability, all technical and policy aspects of the underlying core infrastructure

10   and the principal name spaces are administered by the Internet Corporation for

11   Assigned Names and Numbers ["ICANN"]. ICANN is the authority that coordinates

12   the assignment of unique identifiers for use on the Internet, such as domain names,

13   i.e. "google.com." In 2001, ICANN appointed Verisign, Inc as the authoritative

14   custodian of top-level domain names- those ending in ".com" and ".net."

15   The domain name system, or DNS, is a system designed to make the Internet

16   more easily accessible. It is difficult to remember long lists of numbers that make up

17   an IP address, so the DNS uses domain names rather than numbers, then links the

18   domain name to an IP address.

19   The end result is that a website can be found at a domain name rather than its

20   complex IP address, i.e."192.0.34.163" – which is how computers on the network

21   know it. Domain names are registered on the Internet through ARIN by registrars

22   such as "GoDaddy" and "Networksolutions."

23   Domain name registrars are required by their agreement with ICANN to make

24   domain name registration information public. These records are made available

25   through a "WHOIS," i.e. www.networksolutions.com/whois. A WHOIS search

26   displays the registrar, registrant, and IP address of the domain. Likewise, IP address

27   records are publically available through ARIN searches which show the host of IP

28   addresses.

7

## PARTIES

1.     Plaintiff, James E. Keener ["Keener"] is an individual and a resident of Riverside County, California.

2.     Defendant Media Breakaway, LLC ["Media Breakaway"] is a Nevada limited liability company with its principle place of business in Westminster, CO. Media Breakaway does business as Affiliate.com.

3.     Defendant Dynamic Dolphin, Inc ["Dynamic Dolphin"] is a Delaware corporation with its principle place of business in Broomfield, CO. Dynamic Dolphin is a wholly-owned subsidiary of Media Breakaway and is an ICANN accredited domain name registrar.

4.     Defendant Steven Richter ["Steven"] is an individual and a resident of The State of New York. Keener is informed and believes and therefore alleges Steven is the President of Media Breakaway.

5.     Defendant Scott Richter ["Scott"] is an individual and a resident of The State of Colorado. Keener is informed and believes and therefore alleges Scott is the president of Affiliate.com.

6.     Defendant Carol Richter ["Carol"] is an individual and a resident of The State of New York. Keener is informed and believes and therefore alleges Carol is an officer of Media Breakaway.

7.     Does 1-100 are persons to be identified. Keener is unaware of the true names and capacities of these defendants and therefore sues by such fictitious names. Keener will amend this complaint to allege their true names and capacities once ascertained. Keener is informed and believes and therefore alleges that each of the fictitiously-named defendants, individually and acting in concert with each other and others, are responsible in some manner for the occurrences herein

## JURISDICTION

8.     This court has original jurisdiction over this matter as 15 U.S.C. § 7701 *et seq.* and 15 U.S.C. §1125 *et seq.* present federal questions.

8

9.    This court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 in that: (1) the defendants reside in different states from plaintiff, and (2) the amount of controversy exceeds $75,000.00.

10.    This court has jurisdiction over the supplemental state law claims pursuant to 28 U.S.C. § 1367.

11.    Further, defendants have submitted exclusively to this jurisdiction through their Registrar Accreditation Agreement with ICANN.

12.    Finally, defendants, individually and acting in concert with each other and others, sent or advertised in unsolicited commercial email messages ["UCEs"] sent to Keener in California via Yahoo! email servers, which are also located in California.

## VENUE

13.    Venue is proper in this jurisdiction because Keener's resides in this jurisdiction.

14.    Further, defendants have subjected themselves exclusively to this venue pursuant to their ICANN Registrar Accreditation Agreement.

## BACKGROUND

14.    From January 2010 to December 2010, Keener received approximately (5000) five-thousand UCEs at his "Yahoo!" email account. The UCEs advertised products ranging from erectile dysfunction aids to allegedly free gifts.

15.    Merely Annoying and bothersome at first, the UCEs began to increase in frequency however, to the point Keener was spending 20-30 minutes a day sifting through the UCEs to find his legitimate emails.

16.    In January 2011, Keener began to track the UCEs and investigate their source(s). In June 2011, Keener was able to identify defendants as the source of the majority of the UCEs. Therefore, on June 21, 2011, Keener sent a letter to defendants requesting his email address be removed from their mailing list(s).

17.    Despite sending defendants the letter, Keener has received no less than

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

1    (60) sixty UCEs messages from defendants since June 21, 2011; many, several times

2    a day.

3                    **UNSOLICITED COMMERCIAL EMAIL SAMPLES**

4          18.    Keener has received approximately (90) eighty separate UCEs from

5    defendants since January 2011. The following examples are illustrative of all ninety:

6          19.    On July 1, 2011, Keener received an email purportedly sent from,

7    "❖ Säms Club Makeover." The message was dated July 16, 2011 and addressed to,

8    "recip.62.5331510@nikkeihy.com." The subject of the email read, "★·.$1000.·★

9    Sams Club Summer Makeover Recipient." The body of the email stated, in part,

10   "You have been selected to receive…a FREE $1,000 Sam's Club Gift Card! [and]

11   complimentary Sam's Club Plus membership!"

12         20.    The body of the email contained two footers. The first indicated the

13   email had been sent from Ontario, Canada. The second indicated the email had been

14   "Delivered by iranfreehost.net," located in St. Johns, West Indies.

15         21.    However, an inspection of the header information[1] of the email

16   showed it was sent from the domain, "nikkeihy.com." A WHOIS search of the

17   domain "nikkeihy.com" showed Dynamic Dolphin as the registrar and 69.6.51.96.

18   as the IP address.

19         22.    An ARIN search of IP 69.6.51.96 showed it was assigned to  Media

20   Breakaway.

21         23.    The body of the email contained a hyperlink, "Click Here To Claim."

22   Upon clicking on the link, Keener was temporarily directed to the website,

23   "www.iranfreehost.net." A WHOIS search of the domain "iranfreehost.net" showed

24   Dynamic Dolphin as the registrar and 69.6.52.111 as the IP address.

25         24.    An ARIN search of IP 69.6.52.111 showed it was assigned to Media

26   Breakaway in Colorado, USA and not in Ontario, Canada or St. Johns, West Indies

27   _____

28   [1] Header information is information that travels with every email. It contains details about the sender, route, and
     receiver; including date and time the email was sent and received.

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

1   as purported in the footers.

2      25.   Keener was then automatically redirected to the website,

3   "bestfreebieoffers.com" where Keener was offered a "free" Sam's Club gift card.

4   However, in order to receive the card, Keener had to: (1) provide his email address-

5   even though he was notified via his email address about the free gift, and (2)

6   "...purchase products of interest and/or take other actions such as applying for or

7   obtaining a loan or extension of credit (including credit cards), transferring a

8   balance, or similar steps."

9      26.   A WHOIS search of the domain "bestfreebieoffers.com" showed

10   Dynamic Dolphin as the registrar.

11      27.   When Keener attempted to navigate away from

12   "bestfreebieoffers.com," a "pop-up" message appeared that stated, in part, "Are you

13   sure you want to leave?" Then a loud female voice stated, "Congratulations, you are

14   today's winner. Please claim your prize in the next two minutes by entering your

15   email address on the next page." Keener was forced to shut down his internet

16   browser in order to navigate away.

17      28.   On June 28, 2011, Keener received an email purportedly sent from,

18   "Please ⇨ Confirm," The message was addressed to "recip.2117.16595624

19   @membersselectnow." The subject of the email read, "✈ Southwest Airlines ✈

20   Ticket Notification: 6/28/2011." The body of the email stated, in part,

21   "Congratulations! You have been selected to receive COMPLIMENTARY tickets

22   and the destinations have been amended to include ANY SOUTHWEST

23   DESTINATION! Please confirm email address to GET YOUR 2 FREE

24   SOUTHWEST TICKETS and choose where you are going FREE!"

25      29.   The body of the email contained two footers. The first indicated the

26   email had been sent from Vancouver, British Columbia. The second indicated the

27   email had been "Delivered by FreeBelizeAuction," located in Belize, Central

28   America.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

30.     However, an inspection of the header information of the email showed it was sent from the domain, "membersselectnow.com." A WHOIS search of the domain "membersselectnow.com" showed Dynamic Dolphin as the registrar, Media Breakaway as the registrant, and an IP address of 69.6.52.3.

31.     An ARIN search of IP 69.6.52.3 showed it was assigned to Media Breakaway in Colorado, USA and not Vancouver, British Columbia or Belize, South America as purported in the footers.

32.     The body of the email contained a hyperlink, "Click Here To Claim." Upon clicking on the link, Keener was temporarily directed to the website, "www.visitourallies.com." A WHOIS search of the domain "visitourallies.com" showed Dynamic Dolphin as the registrar, Media Breakaway as the registrant, and an IP address of 69.6.51.71.

33.     An ARIN search of IP 69.6.51.71 showed it was assigned to Media Breakaway.

34.     Keener was then automatically redirected to the website, "your-next-flight.com" where Keener was offered a two "free" Southwest Airline Tickets. However, in order to receive the tickets, Keener had to: (1) provide his email address- even though he was notified via his email address about the free gift, and (2) purchase products of interest and/or take other actions such as applying for or obtaining a loan or extension of credit (including credit cards), transferring a balance, or similar steps.

35.     On June 27, 2011, Keener received the exact same email as the one from June 28, 2011, but this email was addressed to, "recip.2115.1731583 @membersalertsite.com." The body of the email contained two footers. The first indicated the email had been sent from Vancouver, British Columbia. The second indicated the email had been "Delivered by FreeBelizeAuction," located in Belize, Central America.

36.     A WHOIS search of the domain "membersalertsite.com" showed

12

1   Dynamic Dolphin as the registrar, Media Breakaway as the registrant, and an IP

2   address of 69.6.51.223.

3       37.   An ARIN search of IP 69.6.51.223 showed it was assigned to Media

4   Breakaway in Colorado, USA and not Vancouver, British Columbia or Belize,

5   South America as purported in the footers.

6       38.   The hyperlink in the June 27 email directed Keener to the website,

7   "blackwebhost.net." A WHOIS search of the domain "blackwebhost.net" showed

8   Dynamic Dolphin as the registrar, Media Breakaway as the registrant, and an IP

9   address of 69.6.52.58.

10      39.   An ARIN search of IP 69.6.52.58 showed it was assigned to Media

11  Breakaway.

12      40.   On June 25, 2011, Keener received an email purportedly sent from,

13  "--_Walmart_Giveaway_Mgmr_--." The message was dated July 10, 2011 and

14  addressed to, "recip.56.7500117@rentetarievensparen.com." The subject of the

15  email read, "Wal-Mart Summer Makeover 1000$ for June 25, 2011." The body of

16  the email stated, in part, "Congratulations! You have been chosen to receive a FREE

17  $1,000 WALMART Card! Follow the link to confirm shipment of your gift card."

18      41.   The body of the email contained two footers. The first indicated the

19  email had been sent from Scottsdale, Arizona. The second indicated the email had

20  been "Delivered by bestnameson.net," located in St. John, West Indies.

21      42.   However, an inspection of the header information of the email showed

22  it was sent from the domain, "rentetarievensparen.com." A WHOIS search of the

23  domain "rentetarievensparen.com" showed Dynamic Dolphin as the registrar and an

24  IP address of 69.6.52.135.

25      43.   An ARIN search of IP 69.6.52.135 showed it was assigned to Media

26  Breakaway in Colorado, USA and not Scottsdale, AZ or St. John, West Indies as

27  purported in the footers.

28      44.   The body of the email contained a hyperlink, "Click To Claim." Upon

13

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

1   clicking on the link, Keener was temporarily directed to the website,

2   "bestnameson.net." A WHOIS search of the domain "bestnameson.net" showed

3   Dynamic Dolphin as the registrar and an IP address of 69.6.51.226.

4      45.   An ARIN search of IP 69.6.51.226 showed it was assigned to Media

5   Breakaway in Colorado, USA and not St. John, West Indies as purported in the

6   footer.

7      46.   Keener was then automatically redirected to the website

8   "freebotious.com," where Keener was offered a "free" Walmart gift card. However,

9   in order to receive the card, Keener had to: (1) provide his email address- even

10   though he was notified via his email address about the free gift, and (2) "…purchase

11   products of interest and/or take other actions such as applying for or obtaining a loan

12   or extension of credit (including credit cards), transferring a balance, or similar

13   steps."

14      47.   A WHOIS search of the domain "freebotious.com" showed Dynamic

15   Dolphin as the registrar.

16      48.   On June 24, 2011, Keener received an email purportedly sent from,

17   "♥ ♥ ♥ Victoria's Offer♥ ♥ ♥." The message was dated July 9, 2011 and addressed to

18   "recip.50.6817450@clickherecat.com." The subject of the email read, "Your Next

19   Purchase at Victoria's Secret is FREE!!!" The body of the email stated, in part,

20   "Your next purchase at Victoria's Secret is absolutely FREE* (up to $1,000) when

21   you take our trend survey. It only takes minutes to earn your Victoria's Secret Gift

22   Card*! (Special characters in original)

23      49.   The body of the email contained two footers. The first indicated the

24   email had been sent from Ontario, Canada. The second indicated the email had been

25   "Delivered by greatoutrageous.com," located in St. Johns, West Indies.

26      50.   However, an inspection of the header information of the email showed

27   it was sent from the domain "clickherecat.com." A WHOIS search of the domain

28   "clickherecat.com" showed Dynamic Dolphin as the registrar and an IP address of

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

69.6.53.52.

51.    An ARIN search of IP 69.6.53.52 showed it was assigned to Media Breakaway in Colorado, USA and not Ontario, Canada or St. Johns, West Indies as purported in the footers.

52.    The body of the email contained a hyperlink, "[ Start' Hĕre ]." Upon clicking on the link, Keener was temporarily directed to the website "greatoutrageous.com." A WHOIS search of the domain "greatoutrageous.com" showed Dynamic Dolphin as the registrar and an IP address of 69.6.51.137.

53.    An ARIN search of IP 69.6.51.137 showed it was assigned to Media Breakaway in Colorado, USA and not St. Johns, West Indies as purported in the footers.

54.    Keener was then automatically redirected to the website, "amazingfreerewards.com" where Keener was offered a "free" Victoria's Secret gift card. However, in order to receive the card, Keener had to: (1) provide his email address- even though he was notified via his email address about the free gift, and (2) "…purchase products of interest and/or take other actions such as applying for or obtaining a loan or extension of credit (including credit cards), transferring a balance, or similar steps."

## FIRST CAUSE OF ACTION
## CONTROLLING THE ASSAULT OF NON-SOLICITED PORNOGRAPHY AND MARKETING- "CAN-SPAM"

55.    Keener repeats, re-alleges, and incorporates the foregoing paragraphs.

56.    15 U.S.C. § 7704(a)(1) prohibits the transmission of UCEs that contain or are accompanied by misleading or materially false header information.

57.    Defendants, individually and acting in concert with each other and others, sent Keener UCEs which contained or were accompanied by misleading and materially false header information including:

A. "To" Field

15

58.     Each of the UCEs contained  grossly misrepresented information in the "to" field, i.e. "recip.62.5331510," "recip.56.7500117," and "undisclosed" instead of Keener's actual name and email address of *****@Yahoo.com.[2]

**B. "From" Field**

59.     Each of the UCEs contained grossly misrepresented information in the "from" field including the misrepresentation that the message was sent by reputable companies, i.e. Southwest Airlines, Victoria's Secret, Wal-Mart, etc., and not defendants.

**C. "Date" Field**

60.     The majority of the UCEs contained grossly misrepresented information in the "date" field, to wit, dates which were days, weeks, months, and sometimes years in advance of the actual date the UCEs were actually sent and received.

61.     Keener is informed and believes and therefore alleges defendants, individually and acting in concert with each other and others, purposefully postdated the UCEs in order to keep them "at the top of the list" of emails when the emails are sorted by date received; which is Keener's common practice. This causes the UCEs to be the newest email up to and including the falsified date; further enticing the recipient to open the message.

**D. Source**

62.     Defendants, individually and acting in concert with each other and Others, used numerous domain names and IP addresses in each of the UCEs in an attempt to disguise their source and evade spam filters; thus misrepresenting their source.

63.     15 U.S.C. § 7704(a)(2) prohibits the transmission of UCEs that contain misleading "subject" lines.

64.     Defendants, individually and acting in concert with each other and

---

[2]  Keener's email address has been redacted in light of the nature of these proceedings.

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

1   others, sent to Keener UCEs which contained grossly misleading information in the

2   "subject" line, including but not limited to misrepresenting that Keener had received

3   free items when in fact Keener was required to make purchases, apply for credit or

4   loans, or participate in complicated marketing schemes for the purportedly free

5   items.

6       65.    15 U.S.C. § 7704(a)(4) prohibits the transmission of UCEs to anyone

7   who has notified the sender of their objection to receiving further UCEs.

8       66.    On June 21, 2011, Keener sent defendants a letter requesting his email

9   address be removed from their mailing list(s). Keener is informed and believes and

10  therefore alleges defendants received Keener's letter on or about June 24, 2011.

11  Therefore, the UCEs sent after June 24, 2011 would be in violation of § 7704(a)(4).

12      67.    15 U.S.C. § 7704(a)(5)(A)(i) prohibits the transmission of UCEs that

13  do not contain a clear and conspicuous identification that the message is an

14  advertisement or solicitation.

15      68.    Defendants, individually and acting in concert with each other and

16  others, sent Keener UCEs that did not contain a clear and conspicuous identification

17  that the message was an advertisement or solicitation.

18      69.    15 U.S.C. § 7704(a)(5)(A)(ii) prohibits the transmission of UCEs that

19  do not contain a clear and conspicuous notice of the opportunity to decline to

20  receive further UCEs from the sender.

21      70.    Defendants, individually and acting in concert with each other and

22  others, sent Keener UCEs with invalid links to "unsubscribe" from their mailing

23  list(s) and required Keener to contact fictitious parties in Argentina and Canada if

24  Keener wished to stop receiving UCEs; even though defendants are located in the

25  United States.

26      71.    15 U.S.C. § 7704(a)(5)(A)(iii) prohibits the transmission of UCEs that

27  do not contain a valid physical postal address.

28      72.    Defendants, individually and acting in concert with each other and

17

1    others, sent Keener UCEs which did not contain their valid physical postal address,
2    but rather fictitious postal addresses located in Canada, Argentina, and the West
3    Indies.

4         73.    15 U.S.C. § 7704(b)(3) prohibits the transmission of UCEs through a
5    computer network that such person has accessed without permission.

6         74.    Defendants, individually and acting in concert with each other and
7    others, sent Keener UCEs through multiple computer networks which they did not
8    have permission to send UCEs through, including but not limited to
9    WholesaleBandwidth, Inc, AT&T, Verizon, 360 Networks, and Yahoo!.

10                         **CAN-SPAM'S PRIVATE RIGHT OF ACTION**

11         75.    15 U.S.C. § 7704 *et seq.* provides a private right of action limited to
12    ISPs. Therefore, Keener seeks redress for the foregoing violations of CAN-SPAM
13    under California's Unfair Competition Law- Cal. Bus. & Prof. Code § 17200 *et seq.*

14                           **SECOND CAUSE OF ACTION**

15                                 **LANHAM ACT**

16         76.    Keener repeats, re-alleges, and incorporates the foregoing paragraphs.

17         77.    15 U.S.C. § 1125(a)(1) prohibits the use of any word, term, name, or
18    symbol which is (A) likely to cause confusion or deceive as to the affiliation,
19    connection, or association with another, or (B) misrepresents the nature,
20    characteristics, or qualities of his or another's goods, services, or commercial
21    activities.

22         78.    Defendants, individually and acting in concert with each other and
23    others, sent Keener UCEs which contained words, terms, names, and symbols which
24    confused and deceived Keener, to wit, the unauthorized use of trademarked words,
25    terms, names, and symbols, i.e. Southwest Airlines, Dell Computer, Outback Steak
26    House, Wal-Mart, JCPenney, Starbucks, Victoria's Secret, Subway, etc.

27         79.    Defendants, individually and acting in concert with each other and
28    others, sent Keener UCEs which contained words, terms, names, and symbols which

1   misrepresented the nature, characteristics, or qualities of defendants or another's
2   goods, services, or commercial activities, to wit, advertising items as "free" or
3   "complimentary" when in fact Keener was required to make purchases, apply for
4   credit or loans, or participate in complicated marketing schemes for the purportedly
5   free items.

6                    **LANHAM'S PRIVATE RIGHT OF ACTION**

7        80.    15 U.S.C. § 1125 *et seq.* provides a private right of action generally
8   limited to business competitors. Therefore, Keener seeks redress for defendants'
9   violations of LANHAM under California's Unfair Competition Law- Cal. Bus. &
10  Prof. Code § 17200 *et seq.*

11                        **THIRD CAUSE OF ACTION**

12        **CALIFORNIA'S PROHIBITION AGAINST HARASSMENT**

13       81.    Keener repeats, re-alleges, and incorporates the foregoing paragraphs.
14       82.    Cal. Pen. Code  § 653m(b) prohibits repeated contact via email with
15  intent to annoy or harass the recipient.
16       83.    Defendants, individually and acting in concert with each other and
17  others, sent Keener UCEs after receiving Keener's request to remove his email
18  address for their email list(s).
19       84.    Based on having prior notice from Keener that he wished not to receive
20  any further UCEs from defendants, the act of sending additional UCEs can only be
21  construed as intending to annoy or harass Keener.
22       85.    Keener seeks redress for defendants' violations of § 653m(b)  under
23  California's Unfair Competition Law- Cal. Bus. & Prof. Code § 17200 *et seq.*

24                        **FOURTH CAUSE OF ACTION**

25             **CALIFORNIA CORPORATIONS CODE**

26       86.    Cal. Corp. Code § 2105(a) prohibits any foreign corporation from
27  transacting business in California without having first obtained a certificate of
28  qualification from the California Secretary of State.

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

87. Defendants have failed to obtain and file the required certificate of qualification with the California Secretary of State prior to conducting business in California.

88. Keener seeks redress for defendants' violation of Cal. Corp. Code under California's Unfair Competition Law- Cal. Bus. & Prof. Code § 17200 *et seq.*

## FIFTH CAUSE OF ACTION

## CALIFORNIA'S ANTI-SPAM LAW

89. Keener repeats, re-alleges, and incorporates the foregoing paragraphs.

90. Similar to CAN-SPAM, Cal. Bus. & Prof. Code §§ 17529.5(a)(2)-(3) prohibit falsified, misrepresented, or forged information in email headers and "subject" lines.

91. Keener incorporates by reference the foregoing violations of CAN-SPAM as the factual basis for defendants' violations of §§ 17529.5(a)(2)-(3).

## PREEMPTION OF CALIFORNIA'S ANTI-SPAM LAW

92. Cal. Bus. & Prof. Code § 17529.5 was partially preempted by CAN-SPAM. However, CAN-SPAMs preemption excludes state law claims related to deceptive and misleading UCEs. See *Hypertouch Inc. v. ValueClick Inc.*, Cal. Ct. App., 2d Dist., Feb. 10, 2011.

## SIXTH CAUSE OF ACTION

## CALIFORNIA'S FALSE ADVERTISING LAW

93. Keener repeats, re-alleges, and incorporates the foregoing paragraphs.

94. Cal. Bus. & Prof. Code § 17500 prohibits disposition of property through publically disseminated advertising, including the Internet, which contains a statement which is untrue or misleading and the defendant knew or should have known was untrue or misleading; or publically disseminated advertising with the intent not to dispose of the property at the price advertised.

A. **Publically Disseminated Advertising**

95. In this case, defendants, individually and acting in concert with each

1  other and others,  publically disseminated advertising via UCEs addressed to
2  Keener.

3  **B. Disposition of Property**

4     96.   These UCEs related to the disposition of property, including airline
5  tickets, gift cards, memberships, and meals.

6  **C. Untrue and Misleading Statements**

7     97.   These UCEs contained untrue and misleading statements, i.e. Keener
8  had received free items when in fact Keener was required to make purchases, apply
9  for credit cards or loans, and participate in complicated marketing schemes.

10  **D. Defendants' Knowledge**

11     98.   Defendants knew or should have known the statements in the UCEs
12  were untrue or misleading because:

13     (1) Defendants, individually and acting in concert with each other and
14  others, placed links in their UCEs  which advertised purportedly "free" items, to
15  websites which conspicuously state the items were in fact, not free; and

16     (2) Defendants, individually and acting in concert with each other and
17  others, used special characters and symbols in the UCEs which was done willfully
18  and deliberately to avoid detection by "spam filters."

19     (3) Defendants, individually and acting in concert with each other and
20  others, have been the subject of several private multi-million dollar civil court
21  judgments and an action by New York State Attorney General for similar violations
22  as those complained on herein.[3]

23  **SEVENTH CAUSE OF ACTION**

24  **CALIFORNIA'S UNFAIR COMPETITION LAW**

25

26  _____

[3] *Attorney General of New York v. Richter-* (2003) NY
27  *MySpace Inc v. Media Breakaway & Richter et al-* (2007) USCD CA 2:07-cv-00496
*Microsoft Corp Inc v. Richter-* (2007) USDC WA 2:04-cv-00116
28  *Facebook, Inc. v. Richter-* (2010) USDC CA 5:10-cv-04710

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

1    99.   Keener repeats, re-alleges, and incorporates the foregoing paragraphs.

2    100.   Cal. Bus. & Prof. Code § 17200 *et seq*. prohibits: (1) unlawful, unfair,

3    and fraudulent business acts or practices, (2) unfair, deceptive, untrue or misleading

4    advertising; and (3) any acts prohibited by Cal. Bus. & Prof. Code § 17500.

5    101.   Keener incorporates by reference the foregoing violations of CAN-

6    SPAM, LANHAM, and California's False Advertising Law as the factual basis for

7    defendants' violations of § 17200.

8    ## EIGHTH CAUSE OF ACTION

9    ## CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT

10    102.   Keener repeats, re-alleges, and incorporates the foregoing paragraphs.

11    103.   Cal. Bus. & Prof. Code § 1770 *et seq*. prohibits:

12    **(1)** Misrepresenting the source, sponsorship, approval, or certification

13    of goods;

14    104.   Defendants, individually and acting in concert with each other and

15    others, misrepresented the source, sponsorship, approval, or certification of the

16    goods advertised in their UCEs by intimating they were sponsored by, approved by,

17    or certified by companies such as Southwest Airlines, Wal-Mart, JCPenney, etc,

18    when in fact, they were not.

19    **(2)** Misrepresenting the affiliation, connection, or association with, or

20    certification by, another;

21    105.   Defendants, individually and acting in concert with each other and

22    others, misrepresented the affiliation, connection, or association with, or

23    certification by, another by intimating they were affiliated with, connected to, or

24    associated with companies such as Southwest Airlines, Wal-Mart, JCPenney, etc.

25    when the are not.

26    **(3)** Representing that goods or services have sponsorship, approval,

27    characteristics, ingredients, uses, benefits, or qualities which they do not have or that

28    a person has sponsorship, approval, status, affiliation, or connection which he or she

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

1    does not have;

2         106.   Defendants, individually and acting in concert with each other and

3    others, misrepresented the goods advertised had sponsorship, approval, and

4    quantities. Keener is informed and believes and therefore alleges defendants do not

5    have the sponsorship or approval of Southwest Airlines, Wal-Mart, JCPenney, etc.

6    Further, Keener is informed and believes and therefore alleges defendants do not

7    have and never had any of the items offered in their UCEs.

8         **(4)** Representing that goods are original or new if they have deteriorated

9    unreasonably or are altered, reconditioned, reclaimed, used, or secondhand;

10        107.   Defendants, individually and acting in concert with each other and

11   others, misrepresented the goods advertised in their UCEs were original or new

12   when, based on information and belief, defendants do not have and never had any of

13   the items advertised in their UCEs.

14        **(5)** Representing that goods or services are of a particular standard,

15   quality, or grade, or that goods are of a particular style or model, if they are not;

16        108.   Defendants, individually and acting in concert with each other and

17   others, misrepresented that the goods advertised in their UCEs were of a particular

18   standard, quality, grade, style, or model when, based on information and belief,

19   defendants do not have and never had any of the items advertised in their UCEs.

20        **(6)** Advertising goods or services with intent not to sell them as

21   advertised;

22        109.   Keener is informed and believes and therefore alleges defendants

23   do not have and never had any of the items advertised in their UCEs, and therefore

24   individually and acting in concert with each other and others, advertised goods with

25   intent not to sell them as advertised.

26        **(7)** Advertising goods or services with intent not to supply reasonably

27   expectable demand, unless the advertisement discloses a limitation of quantity;

28        110.   Keener is informed and believes and therefore alleges defendants,

23

1  individually and acting in concert with each other and others, send millions of UCEs

2  per day advertising multiple items. Based on information and belief, defendants do

3  not have and never had any of the items advertised in their UCEs and therefore

4  could not supply any demand, let alone a reasonably expectable demand.

5       **(8)** Representing that a consumer will receive a rebate, discount, or

6  other economic benefit if the earning of the benefit is contingent on an event to

7  occur subsequent to the consummation of the transaction; and

8      111.  Defendants, individually and acting in concert with each other and

9  others, represented in their UCEs that Keener would receive free items when in fact,

10  Keener was required to make purchases, apply for credit or loans, or participate in

11  complicated marketing schemes for the purportedly free items.

12       **(9)** Inserting an unconscionable provision in the contract.

13      112.  Defendants, individually and acting in concert with each other and

14  others, advertised free items in their UCEs, when in fact Keener was required by the

15  contract ("Terms and Conditions") to make purchases, apply for credit or loans, or

16  participate in complicated marketing schemes for the purportedly free items; the

17  requirements of which is unconscionable.

18                    **PRAYER FOR RELIEF**

19                **VIOLATIONS OF CAN-SPAM**

20      113.  Pursuant to Cal. Bus. & Prof. Code §§ 17204 and 17535 Keener seeks

21  restitution and equitable relief in the form of an injunction prohibiting defendants,

22  individually and acting in concert with each other and others, from sending or

23  advertising in UCEs which violate the provisions of CAN-SPAM.

24                    **PRAYER FOR RELIEF**

25                **VIOLATIONS OF LANHAM**

26      114.  Pursuant to Cal. Bus. & Prof. Code §§ 17204 and 17535 Keener seeks

27  restitution and equitable relief in the form of an injunction prohibiting defendants,

28  individually and acting in concert with each other and others, from sending or

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

1 | advertising in UCEs which violate the provisions of LANHAM.

**PRAYER FOR RELIEF**

**VIOLATIONS OF CA PROHIBITION AGAINST HARASSMENT**

115.   Pursuant to Cal. Bus. & Prof. Code § 17204 Keener seeks injunctive relief in the form of an injunction prohibiting defendants, individually and acting in concert with each other and others, from communicating with Keener.

**PRAYER FOR RELIEF**

**VIOLATIONS OF CA CORPORATIONS CODE**

116.   Pursuant to Cal. Bus. & Prof. Code § 17204 Keener seeks equitable relief in the form of an injunction prohibiting defendants, individually and acting in concert with each other and others, from transacting business in California.

**PRAYER FOR RELIEF**

**VIOLATIONS OF CA ANTI-SPAM LAW**

117.   Pursuant to Cal. Bus. & Prof. Code § 17259.5(b)(B)(ii), Keener seeks liquidated damages of ($1,000) one-thousand dollars per UCE.

**PRAYER FOR RELIEF**

**VIOLATIONS OF CA FALSE ADVERTISING LAW**

118.   Pursuant to Cal. Bus. & Prof. Code § 17535 Keener seeks equitable relief in the form of an injunction prohibiting defendants, individually and acting in concert with each other and others, from sending or advertising in UCEs which violate the provisions of § 17500.

**PRAYER FOR RELIEF**

**VIOLATIONS OF CA UNFAIR COMPETITION LAW**

119.   Pursuant to Cal. Bus. & Prof. Code § 17204 Keener seeks restitution and equitable relief in the form of an injunction prohibiting defendants, individually and acting in concert with each other and others, from violating the provisions of § 17200.

**PRAYER FOR RELIEF**

25

1  **VIOLATIONS OF CA CONSUMER REMEDIES ACT**

2  120. Pursuant to Ca. Civ. Code § 1780(a)(2) Keener seeks equitable relief in

3 the form of an injunction prohibiting defendants, individually and acting in concert

4 with each other and others, from violating the provisions of § 1750.

5         **PRAYER FOR RELIEF**

6        **DECLARATORY JUDGMENT**

7  121. Pursuant to 28 U.S.C. § 2201(a) Keener respectfully requests the Court

8 to make a judicial declaration and determination that defendants, individually and

9 acting in concert with each other and others, have violated the foregoing provisions

10 of 15 U.S.C. § 7701, 15 U.S.C § 1125, Cal. Pen. Code § 653m, Cal. Corp. Code §

11 2105, Cal. Bus. & Prof. Code § 17529.5, Cal. Bus. & Prof. Code § 17500, Cal. Bus.

12 & Prof. Code § 17200, and Cal. Bus. & Prof. Code § 1750.

13  122. Pursuant to 28 U.S.C. § 2202, Keener seeks any further relief the Court

14 determines necessary and proper.

15

16

17

18

19 DATED:  July 26, 2011

20

21           James E. Keener , Pro Se

22

23

24

25

26

27

28

26

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL COVER SHEET**

| I (a) PLAINTIFFS (Check box if you are representing yourself ☑) | DEFENDANTS |
|---|---|
| JAMES E. KEENER, PRO SE | MEDIA BREAKAWAY, LLC d/b/a AFFILATE.COM, DYNAMIC DOLPHIN, INC, STEVEN RICHTER, SCOTT RICHTER, CAROL RICHTER, and DOES 1-100 |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| JAMES E. KEENER, PRO SE<br>40485 Murrieta Hot Springs #402<br>Murrieta, CA 92563 | |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff   ☑ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant   ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:   JURY DEMAND:** ☐ Yes ☑ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☑ No   ☑ **MONEY DEMANDED IN COMPLAINT: $** $90,000.00

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

Violations of 15 U.S.C. 7701 & 15 U.S.C. §1125 for SPAM

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS<br>PERSONAL INJURY | TORTS<br>PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 540 Mandamus/ Other | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | PROPERTY RIGHTS |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | FORFEITURE / PENALTY | ☐ 820 Copyrights |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | SOCIAL SECURITY |
| ☑ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | IMMIGRATION | | ☐ 640 R.R. & Truck | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | REAL PROPERTY | ☐ 462 Naturalization Application | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 463 Habeas Corpus-Alien Detainee | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 465 Other Immigration Actions | | ☐ 690 Other | FEDERAL TAX SUITS |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 240 Torts to Land | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 245 Tort Product Liability | | | | |
| | ☐ 290 All Other Real Property | | | | |

ED CV 11 - 01194 VAP

**FOR OFFICE USE ONLY:** Case Number: _____

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**

CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No   ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No   ☐ Yes
If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)   ☐ A. Arise from the same or closely related transactions, happenings, or events; or

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, __and__ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐   Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Riverside | |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐   Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Colorado<br>New York<br>Delaware |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
**Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Riverside | |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER):  _____   Date   07/26/11

**Notice to Counsel/Parties:**  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Virginia A. Phillips and the assigned discovery Magistrate Judge is Sheri Pym.

The case number on all documents filed with the Court should read as follows:

## EDCV11- 1194 VAP (SPx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

===========================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [ ] **Western Division** | [ ] **Southern Division** | [X] **Eastern Division** |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.